1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

TREVOR M. HERTZ,

9

Plaintiff,

10

v.

11

CAROLYN V. COLVIN, Acting
Commissioner of Social Security,

12

Defendant.

13

NO.  C13-738-JLR-JPD

REPORT AND
RECOMMENDATION

14    Plaintiff Trevor M. Hertz appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his applications for Disability

16  Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17  after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18  the Court recommends that the Commissioner's decision be REVERSED and REMANDED

19  for further administrative proceedings.

20                      I.          FACTS AND PROCEDURAL HISTORY

21    At the time of the administrative hearing, plaintiff was a forty-one year old man with a

22  high school education and a certificate from culinary school.  Administrative Record ("AR") at

23  59.  He was also studying electronic engineering at the Washington Engineering Institute.  AR

24  at 79-80.  His past work experience includes employment as a baker, general contractor, and

REPORT AND RECOMMENDATION - 1

1  track foreman.  AR at 81, 98, 192.  Plaintiff reported that he was last gainfully employed in

2  November 2007, although he also worked part-time as a baker at the Silver Reef Casino from

3  June through November 2009.  AR at 27, 191-92.

4       On November 18, 2009, plaintiff filed an application for DIB, alleging an onset date of

5  December 28, 2006.  AR at 25, 60, 158, 191.  Plaintiff asserts that he is disabled due to non-

6  union of his sternum following aortic dissection and replacement surgeries in 2006 and 2007,

7  high blood pressure, and anxiety related to his heart condition.  AR at 25, 61, 68-69, 158, 191.

8       The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 110-

9  14, 117-20.  Plaintiff requested a hearing, which took place on June 23, 2011.  AR at 52-109.

10  On August 24, 2011, the ALJ issued a decision finding plaintiff not disabled and denied

11  benefits based on her finding that plaintiff could perform a specific job existing in significant

12  numbers in the national economy.  AR at 25-38.  Plaintiff's request for review by the Appeals

13  Council was denied, AR at 5-10, making the ALJ's ruling the "final decision" of the

14  Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 26, 2013, plaintiff

15  timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

16                    II.      JURISDICTION

17       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18  405(g) and 1383(c)(3).

19                    III.     STANDARD OF REVIEW

20       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21  social security benefits when the ALJ's findings are based on legal error or not supported by

22  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

23  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

24  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 2

1   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

2   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

3   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

4   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

5   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

6   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

7   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

8   must be upheld.  *Id.*

9           The Court may direct an award of benefits where "the record has been fully developed

10   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

11   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

12   (9th Cir. 1996)).  The Court may find that this occurs when:

13           (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved
14           before a determination of disability can be made; and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled if he
15           considered the claimant's evidence.

16   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

17   erroneously rejected evidence may be credited when all three elements are met).

18                          IV.     EVALUATING DISABILITY

19           As the claimant, Mr. Hertz bears the burden of proving that he is disabled within the

20   meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

21   Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

22   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

23   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

24   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

REPORT AND RECOMMENDATION - 3

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

2   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

3   to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

4   the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

5   then the burden shifts to the Commissioner at step five to show that the claimant can perform

6   other work that exists in significant numbers in the national economy, taking into consideration

7   the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

8   416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

9   to perform other work, then the claimant is found disabled and benefits may be awarded.

10                              V.      DECISION BELOW

11          On August 24, 2011, the ALJ issued a decision finding the following:

12   1.      The claimant meets the insured status requirements of the Social
             Security Act through December 31, 2012.

13
14   2.      The claimant has not engaged in substantial gainful activity since
             December 28, 2006, the alleged onset date.

15   3.      The claimant has the following severe impairments: aortic valve
             disorder status post mitral valve replacement, cardiomyopathy, and
16           emphysema

17   4.      The claimant does not have an impairment or combination of
             impairments that meets or medically equals the severity of one of the
18           listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

19   5.      After careful consideration of the entire record, the undersigned finds
             that the claimant has the residual functional capacity to perform
20           sedentary work as defined in 20 CFR 404.1567(a) involving no more
             than incidental twisting; occasional postural activities except for no
21           climbing ladders, ropes, or scaffolds; avoidance of pulmonary irritants;
             avoidance of concentrated exposure to extreme heat and cold; and
22           simple work tasks.

23   6.      The claimant is unable to perform any past relevant work.

24

7.      The claimant was born on XXXXX, 1970 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.[2]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 28, 2006, through the date of this decision.

AR at 27-38.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err at step five by finding that there are jobs existing in significant numbers in the national economy plaintiff can perform?

2.      Did the ALJ provide clear and convincing reasons for rejecting the medical opinion of treating cardiologist, Thomas Oliver, M.D.?

3.      Did the ALJ err by finding plaintiff less than fully credible?

Dkt. 10 at 2; Dkt. 16 at 2.

## VII.     DISCUSSION

A.      <u>The ALJ Erred at Step Five</u>

As discussed above, at step five of the sequential evaluation process the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v);

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The ALJ may meet this burden by asking a vocational expert ("VE") a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record.  *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  However, "if a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The ALJ found plaintiff not disabled at step five in this case because "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  AR at 37. Specifically, the ALJ found that plaintiff's ability to perform the full range of sedentary work has been impeded by additional limitations, and therefore "[t]o determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The [VE] testified that given all of these factors the individual would be able to perform the requirements of sedentary unskilled representative occupations such as follows:"

> (1) clerical jobs (e.g., telephone quotation clerk, order clerk, and ticket checker), with a total of 3,000 jobs in the state of Washington and 90,000 jobs in the national economy;
>
> (2) surveillance system monitor, with 650 jobs in Washington and 11,700 jobs in the national economy;
>
> (3) telephone solicitor, with 6,300 in Washington and 62,000 in the national economy; and

1

2
(4) table worker, with 400 jobs in Washington and 2,900 in the national economy.

3
AR at 37-38.

4
Plaintiff contends that the ALJ erred at step five because the VE actually testified at the

5
hearing that a claimant with all of the limitations adopted by the ALJ in her written decision

6
could not perform these occupations.  Dkt. 10 at 6.  Specifically, plaintiff points out that the

7
ALJ asserts in her written decision that she adopted the opinion of Dr. Oliver, plaintiff's

8
treating cardiologist, that plaintiff's symptoms will cause him to be "off task" 10% of the

9
workday.  AR at 33, 35.  Significantly, Dr. Oliver's Cardiac Medical Source Statement, which

10
included this limitation, defined being "off task" as having "symptoms likely to be severe

11
enough to interfere with *attention and concentration* needed to perform even simple work

12
tasks."  AR at 351 (emphasis in original).  In one of the hypothetical questions posed to the VE

13
during the hearing, the ALJ expressly included this functional limitation , and the VE testified

14
that being "off task" even 10% of the workday is work-preclusive for each of the sedentary

15
jobs identified during the hearing.  Dkt. 10 at 8-10 (citing AR at 102-05).[3]  Thus, plaintiff

16
argues that the ALJ's finding that there are jobs in the national economy that plaintiff can

17
perform is not supported by substantial evidence.  *Id.* at 10.

18
Finally, with respect to the ALJ's assertion that Dr. Oliver's opinion that plaintiff

19
would be "off task" 10% of the time was consistent with her limitation to simple, routine,

20
repetitive work tasks, plaintiff argues that "the ALJ had already limited Plaintiff to simple

21
work tasks in the original hypothetical question, before she injected the 10% off task limitation

22
into the functional limitations considered."  Dkt. 10 at 11.  Specifically, the ALJ's first

23
_____

[3] With respect to the job of surveillance system monitor, plaintiff asserts that the VE testified that performing this job with this limitation is "questionable" and would be a "challenge" and therefore it would also seriously erode the employment base.  Dkt. 10 at 10.

24

REPORT AND RECOMMENDATION - 8

hypothetical stated that she was taking plaintiff's medication side effects and pain into account, which "would reduce his concentration . . . so he would be restricted to simple work tasks[.]" AR at 100.  The ALJ later asked the VE in a separate hypothetical about the impact of being "off task" for 10% or 20% of the time, i.e., unable to perform even simple work tasks, and plaintiff asserts that "when [this limitation was] included in the RFC, it eliminates all the jobs identified by the VE at the sedentary work level."  Dkt. 10 at 11.

The Commissioner's brief is unhelpful, as it fails to respond to plaintiff's specific arguments.  Instead, the Commissioner simply argues that "the ALJ's step five analysis was proper" because the VE "was able to identify a number of jobs Plaintiff could do that existed in significant numbers in the national economy."  Dkt. 16 at 10.

Plaintiff is correct.  The ALJ's written decision asserts that she adopted Dr. Oliver's opinion that plaintiff would be "off-task" 10% of the time due to difficulty with attention and concentration by limiting plaintiff to "only simple, routine, repetitive work tasks, and this opinion is consistent with that determination."  AR at 35.  The ALJ, however, fails to acknowledge the fact that Dr. Oliver's Cardiac Medical Source Statement defined being "off task" as being unable "to perform *even simple work tasks*."  AR at 351 (emphasis added).  Thus, the ALJ's limitation to only "simple tasks" in the RFC assessment is not consistent with Dr. Oliver's opinion that plaintiff is unable to perform even simple work tasks 10% of the workday.  AR at 28.  Moreover, the ALJ's written decision fails to acknowledge the VE's testimony that a hypothetical individual limited to simple work tasks who is "off task" 10% of the time is unable to perform any of the simple, sedentary jobs identified during the hearing. AR at 102-05.

Specifically, the ALJ's original hypothetical question posed to the VE found that plaintiff's difficulties with attention and concentration would result in a limitation to simple

unskilled work, as opposed to more complex work.  In this first hypothetical, the ALJ did not

mention Dr. Oliver's opinion that plaintiff's attention and concentrate would limit his ability to

perform even simple tasks 10% of the time:

> For my first question, I want you to assume someone who can perform at the sedentary level of work as that term's defined in the regulations; can stand or walk two hours; sit six hours . . . no extensive twisting . . . no ladders, ropes and scaffolds; and otherwise occupational postural activities.
>
> He needs to avoid pulmonary irritants and . . . concentrated exposure to extreme heat [and cold] . . . *I'm going to say because of his medication, the combination of his medications, the side effects and his pain, it would reduce his concentration, so that while he has testified that he performs extremely complex work and as involved in electronic engineering classes, that he would not be able to sustain that level of concentration on complex tasks eight hours a day, so he would be restricted to simple work tasks that are at a complicated[4] level on a regular ongoing basis.*

AR at 100 (emphasis added).  The VE responded that the hypothetical individual could

perform jobs in the "light, simple, clerical realm," as well as jobs such as surveillance system

monitor, telephone solicitor, and table worker.  AR at 100-02.

     The ALJ's second hypothetical question asked the VE if the hypothetical person could

perform any light work with the same limitations.  AR at 101.  The VE responded that the

individual could perform the jobs of interviewer, cleaner housekeeper, bottle racker, and bottle

packer.  AR at 101-02.

     After confirming that an individual who missed work for any reason more than two

days per month would be unable to sustain employment,[5] the ALJ asked the VE if a person

---

[4] In light of the ALJ's finding that plaintiff would not be able to sustain his concentration on complex tasks eight hours a day, the ALJ may have intended to limit plaintiff to simple work tasks at an *uncomplicated* level on a regular ongoing basis.  Alternatively, this may have been a typographical error.  In any event, the ALJ's RFC assessment simply limited plaintiff to "simple work tasks," so any misstatement is not significant.

[5] Although the ALJ initially stated that being absent two days *per week* would be work-preclusive, she later clarified that she meant to ask the VE about absenteeism "two days a month."  AR at 102, 105.

REPORT AND RECOMMENDATION - 10

who is "off task" 20% of the time could also sustain employment in any of the positions

identified.  AR at 102.  The VE testified as follows:

> VE:    Frankly, I think if you're talking about every hour being off six minutes,
> which is ten percent, that is going to be – if you're dealing with people and you're
> -- which is the first category, then that's going to get in the way.  And if you're
> dealing with a packing line or assembly, that's going to get in the way.  I think
> even six--
>
> ALJ:   So you're saying that ten percent off task is work-preclusive?
> …
>
> VE:    With your housekeeper, its okay because you're not dealing with the
> public, you're not on an assembly line.
> …
>
> ALJ:   You would eliminate every job you identified at ten percent also?
>
> VE:    Except the cleaner housekeeper.
>
> ALJ:   Including the telephone clerk, order clerk, ticket taker, surveillance system
> monitor, telephone solicitor.  You'd eliminate all those jobs at ten percent.
>
> VE:    The surveillance system monitor could probably get away with being –
> well, it's questionable.  I think it would be a challenge.

AR at 102-105.

     Thus, when Dr. Oliver's opinion that plaintiff would be "off task" 10% of the time was

considered by the VE, he testified that the only job plaintiff could still perform would be the

light level job of cleaner housekeeper.  AR at 105.  The ALJ's assertion that a limitation to

simple, routine, repetitive work tasks adequately accounts for Dr. Oliver's opinion is therefore

not supported by substantial evidence.  AR at 33, 35.  Furthermore, the ALJ's step five finding

that plaintiff can perform the sedentary jobs identified by the VE during the hearing, including

clerical jobs, surveillance system monitor, telephone solicitor, and table worker, is not

supported by substantial evidence.  Accordingly, this case must be reversed and remanded for

further administrative proceedings.

B.      The ALJ Erred in Evaluating the Medical Opinion Evidence

1.      *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

1        Opinions from non-examining medical sources are to be given less weight than treating

2    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

3    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

4    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

5    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

6    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

7    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

8    consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

9    957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

10                2.    *Thomas Oliver, M.D.*

11       Dr. Oliver is plaintiff's treating cardiologist, and he has been treating plaintiff for his

12   heart valve and aorta conditions since June 12, 2009.  AR at 333, 324-37, 406-13.  Dr. Oliver

13   provided a Cardiac Medical Source Statement on July 16, 2010, providing that plaintiff has had

14   an aortic valve replacement, aortic root dissection and repair, and his prognosis is "good."  AR

15   at 348.  He noted plaintiff's "non-healing sternum [from] two open heart surgeries impair

16   plaintiff's physical activity," and his symptoms include chest pain, weakness, and exercise

17   intolerance.  AR at 348.  He noted that the "only treatment for this ongoing problem is a third

18   open heart surgery," and that plaintiff is only capable of "low stress work" as "stress will

19   [increase blood pressure] which is not good."  AR at 349.  He also explained that plaintiff

20   experiences "anxiety about future heart problems."  AR at 349.

21       With respect to plaintiff's ability to sit and stand/walk in an 8-hour day, Dr. Oliver

22   opined that plaintiff can sit for at least 6 hours and stand/walk about 2 hours, and he does not

23   need a job that permits shifting from sitting, standing or walking at will.  AR at 349.  However,

24   he indicated plaintiff will need to take unscheduled breaks to lie down, although he was "not

REPORT AND RECOMMENDATION - 13

1    sure" how long the breaks would need to be.  AR at 349.  In addition to lifting and postural

2    limitations, he asserted that plaintiff is likely to be "off task" as a result of his symptoms for

3    "10%" of a workday, and that he is likely to be absent from work "about four days per month."

4    AR at 351.

5         The ALJ discussed Dr. Oliver's opinion throughout her written decision, summarizing

6    his treatment notes and his Cardiac Medical Source Statement.  AR at 31-36.  As discussed in

7    detail above, the ALJ stated that she considered Dr. Oliver's opinion "that the claimant would

8    be off-task only 10% of the time and this decrease in concentration has been considered in my

9    determination to limit the claimant to simple, routine, repetitive work tasks."  AR at 33.  She

10   later noted again that she has "considered his opinion that the claimant would be off-task only

11   10% of the time in my determination that the claimant could perform only simple, routine

12   repetitive work tasks, and this opinion is consistent with that determination.  In his treatment

13   notes, Dr. Oliver did not report findings of impaired concentration or attention; rather, he

14   reported during every examination of record that the claimant had appropriate affect, and he

15   was alert and oriented to person, place and time."  AR at 35.

16        As discussed above, the Court finds that the ALJ erred by finding that a limitation to

17   "simple tasks" accounted for this aspect of Dr. Oliver's opinion.  The ALJ failed to

18   acknowledge the fact that Dr. Oliver's Cardiac Medical Source Statement defined being "off

19   task" as being unable "to perform *even simple work tasks*."  AR at 351 (emphasis added).

20   Thus, the ALJ's limitation to only "simple tasks" in the RFC assessment is not consistent with

21   Dr. Oliver's opinion that plaintiff is unable to perform even simple work tasks 10% of the

22   workday.  AR at 28.  Although the ALJ noted that Dr. Oliver's treatment notes "did not report

23   findings of impaired concentration or attention," she does not acknowledge the discrepancy

24   between her RFC assessment and Dr. Oliver's opinion or explain that she was rejecting this

REPORT AND RECOMMENDATION - 14

1   aspect of Dr. Oliver's opinion.  AR at 33, 35.  In light of the VE's testimony that person who is

2   unable to perform even simple work tasks 10% of the workday could not sustain any of the

3   sedentary jobs identified during the hearing, this error was not harmless.

4          Plaintiff further argues that the ALJ erred by rejecting Dr. Oliver's opinion that plaintiff

5   would require unscheduled breaks so he could lie down, and that plaintiff would miss four days

6   of work per month, because these opinions are inconsistent with Dr. Oliver's own treatment

7   notes.  Dkt. 10 at 13 (citing AR at 36, 347, 351).  Plaintiff asserts that although the ALJ argues

8   that Dr. Oliver's treatment notes failed to show evidence of "ongoing fatigue," "shortness of

9   breath, palpitations, syncope, or other symptoms" which would justify these limitations, "Dr.

10  Oliver does not say that his opinion on Plaintiff's limitations are based on fatigue, shortness of

11  breath, palpitations, or syncope."  Dkt. 10 at 13.  Instead, in the Cardiac Medical Source

12  Statement Dr. Oliver asserts that his opinion was based upon plaintiff's signs and symptoms of

13  chest pain, weakness, and exercise intolerance resulting from the non-union of his sternum.  *Id.*

14  Thus, plaintiff argues that the ALJ's reasons for rejecting this aspect of Dr. Oliver's opinion

15  are not clear and convincing.

16         The Court agrees.  As discussed above, Dr. Oliver's Cardiac Medical Source Statement

17  identified plaintiff's signs and symptoms as including "chest pain, weakness, and exercise

18  intolerance" stemming from his "non-healing sternum."  AR at 348.  Based upon these

19  symptoms, Dr. Oliver opined that plaintiff would need unscheduled breaks during the workday

20  to lie down and would miss work "about four days per month."  AR at 349, 351.  The fact that

21  Dr. Oliver's treatment notes did not reflect that plaintiff reported symptoms such as "ongoing

22  fatigue," "shortness of breath, palpitations, [or] syncope" is therefore inopposite.  AR at 36.

23         Although the ALJ further observes that the treatment notes of plaintiff's prior

24  cardiologist in Oregon, Dr. Schroeder, indicated that plaintiff's "exercise tolerance is

REPORT AND RECOMMENDATION - 15

1    reasonable, and he had no unusual shortness of breath," AR at 36, 304, the Court agrees with

2    plaintiff that it is unclear what a "reasonable" exercise tolerance is for a person with a non-

3    union of his sternum after two open heart surgeries.  Similarly, the fact that Dr. Schroeder did

4    not consider plaintiff to have "unusual" shortness of breath does not mean that plaintiff did not

5    experience this symptom at all.  Thus, it is not clear that Dr. Schroeder's treatment notes

6    directly contradict Dr. Oliver's opinion that plaintiff's condition necessitates unscheduled

7    breaks so he can lie down, and that plaintiff will miss four days of work per month.  The ALJ

8    should clarify this issue on remand.

9         Accordingly, on remand, the ALJ shall re-evaluate the medical evidence in this case,

10   including Dr. Oliver's opinion.  If the ALJ rejects any aspect of Dr. Oliver's opinion, she must

11   provide legally sufficient reasons for doing so.

12        C.        On Remand, the ALJ Shall Also Re-Evaluate Plaintiff's Credibility

13        Plaintiff's remaining assignment of error relates to the ALJ's finding that plaintiff is not

14   fully credible.  Dkt. 10 at 15-19.  Here, the ALJ found that "the claimant's medically

15   determinable impairments could reasonably be expected to cause the alleged symptoms;

16   however, the claimant's statements concerning the intensity, persistence and limiting effects of

17   these symptoms are not credible to the extent they are inconsistent with the above residual

18   functional capacity assessment."  AR at 29-30.  In addition, the ALJ's credibility assessment

19   was based in part upon the ALJ's finding that "the objective medical evidence imposes no

20   greater limitations than those provided by the residual functional capacity."  AR at 33.

21        Because this case is being remanded for reconsideration of the medical evidence, and

22   the Court has found that credibility determinations are inescapably linked to conclusions

23   regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also

24   reversed and the issue remanded.  After re-evaluating the medical evidence, the ALJ should

REPORT AND RECOMMENDATION - 16

1   reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should

2   such a conclusion be warranted.

3                                    VIII.   CONCLUSION

4          For the foregoing reasons, the Court recommends that this case be REVERSED and

5   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

6   instructions.  A proposed order accompanies this Report and Recommendation.

7          DATED this 3rd day of December, 2013.

8

9                                           _____

10                                          JAMES P. DONOHUE
                                            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17